**SO ORDERED.**

**SIGNED this 9 day of July, 2013.**

*J. Rich Leonard*

**J. Rich Leonard**
**United States Bankruptcy Judge**

---

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

IN RE:

**CHRISTINE JOSEPHINE**
**ROSZKOWSKI,**

      **DEBTOR.**

**CASE NO. 12–06256–8–JRL**
**CHAPTER 7**

---

**JOSEPH N. CALLAWAY, CHAPTER**
**7 TRUSTEE,**

      **PLAINTIFF,**

      **v.**

**CIMARRON HOMEOWNERS**
**ASSOCIATION, INC.,**

      **DEFENDANT.**

**ADVERSARY PROCEEDING**
**NO. 13–00010–8–JRL**

## <u>ORDER</u>

This matter came before the court on Cimarron Homeowners Association, Inc.'s ("defendant") motion to dismiss the complaint filed by Joseph N. Callaway ("chapter 7 trustee") in the above–captioned adversary proceeding on the grounds that it fails to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). A hearing was held in Raleigh, North

1

Carolina on June 10, 2013. At the conclusion of the hearing, the court took the matter under advisement.

## BACKGROUND[1]

In August 2006, Christine Josephine Roszkowski ("debtor") acquired a condominium located at 1446 Cimarron Parkway, Unit No. 62, Wake Forest, North Carolina, by general warranty deed recorded in Book 12124, Page 2580 of the Wake County Register of Deeds ("condominium"). The debtor acquired the condominium for approximately $86,000.00, which was located in Part C of Cimarron Forest Point Townhomes in Wake Forest, North Carolina subject to a Declaration of Covenants, Conditions and Restrictions separately recorded in Book 3636 at Page 522 of the Wake County Register of Deeds ("declaration") that included certain conditions regarding the payment of assessments, late fees and interest contained therein. The defendant, a homeowners association organized and existing under the laws of the State of North Carolina, was created pursuant to the declaration.

The debtor defaulted in her obligations under the declaration and, as of October 2011, the debtor owed the defendant approximately $3,465.96 in delinquent homeowners association assessments, late fees, interest and related charges. On October 11, 2011, the defendant filed a claim of lien against the condominium with the Wake County Superior Court, File No. 11–M–7104. Thereafter and by specific vote of its board of directors, the defendant commenced a foreclosure proceeding with the Clerk of Superior Court in Wake County. On November 14, 2011, the

---

[1]The foregoing recitation of the facts forming the crux of the dispute in this adversary proceeding are a fair distillation of the allegations in the complaint, which are viewed in a light most favorable to the trustee. See <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993).

defendant initiated a foreclosure proceeding and sent a notice of foreclosure hearing to the debtor informing her of the hearing date on December 15, 2011 at 9:00 a.m.  The notice also stated that the debtor could terminate the foreclosure proceedings and cancel the defendant's claim of lien "by payment of the indebtedness in full, plus foreclosure expenses incurred to the date of payment at any time prior to confirmation of the sale."  Following a hearing, at which the debtor appeared, the assistant clerk entered an order (subsequently amended on January 24, 2012) authorizing the defendant to proceed with the foreclosure of the condominium to satisfy its claim of lien.  On appeal pursuant to N.C. Gen. Stat. § 45–21.16(d1), the Wake County Superior Court affirmed and entered an order on April 9, 2012, authorizing the defendant to proceed with the foreclosure.

The foreclosure sale was conducted on May 24, 2012, and the defendant, who was the sole bidder at the sale, purchased the condominium with a bid of $9,500.00.  At the time of the foreclosure sale, the condominium had a fair market value, less necessary repairs, expenses and costs of sale, of approximately $50,000.00.  The trustee authorized to conduct the foreclosure sale was Nelson G. Harris ("defendant's counsel"), who filed the claim of lien on behalf of the defendant and continually appeared on its behalf throughout the foreclosure proceedings in state court. Defendant's counsel also appeared on the defendant's behalf in connection with the debtor's case and in this adversary proceeding.  After the expiration of the upset bid period, defendant's counsel, acting pursuant to his authority as trustee of the foreclosure sale, executed and recorded a trustee's deed conveying the condominium to the defendant on June 5, 2012.

The debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on August 31, 2012 and the chapter 7 trustee was duly appointed to administer the case.  The debtor's

3

amended schedules,[2] which were filed on November 7, 2012, list total assets of approximately $10,870.00, which is composed of household goods, appliances and furnishings (collectively "household goods") valued at $3,500.00 and a 2006 Hyudai Tiburon ("vehicle") valued at $7,370.00.  The debtor listed total liabilities of $4,069.89, which did include the $9,958.69 that was owed to the defendant and satisfied by the prepetition foreclosure sale of the condominium.  Thus, at the time of the foreclosure sale and execution of the trustee's deed, the debtor had total liabilities of approximately $14,028.58.  In Schedule C, as amended, the debtor claimed the full $3,500.00 exemption allowed under N.C. Gen. Stat. § 1C–1601(a)(4) in the household goods and exempted the full value of the vehicle pursuant to N.C. Gen. Stat. § 1C–1601(a)(3) and (a)(2).

The chapter 7 trustee filed a complaint initiating this adversary proceeding on January 8, 2013, asserting two separate claims for relief for the avoidance of the trustee's deed conveying the condominium to the defendant as a preferential and fraudulent transfer pursuant to §§ 547 and 548, 550 and 551 of the Bankruptcy Code.[3]  On April 11, 2013, the defendant filed the motion to dismiss and supporting memorandum currently before the court asserting that both claims for relief must be dismissed for failure to state a claim upon which relief may be granted.  The chapter 7 trustee filed a response and memorandum in opposition to the defendant's motion to dismiss on April 23, 2013.  The defendant, on April 30, 2013, filed a reply to the chapter 7 trustee's response.

---

[2]By order entered on November 6, 2012, this court appointed Jeffery M. Cook, counsel from the pro bono panel, for the limited purpose of assisting the debtor in amending her schedules to maximize her claim of exemptions.

[3]Unless otherwise indicated, all sections referenced herein are to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.

## DISCUSSION

### A. Standard of Review

Fed. R. Civ. P. 8(a), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7008, requires every pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008.  To demonstrate entitlement to relief and survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 667–78 (2009) ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." (internal citations, quotation marks and alterations omitted)).  The purpose of a motion to dismiss is to "test[] the sufficiency of a complaint" and does not empower a court to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses[,]" Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); therefore, the veracity of the complaint's well–pleaded allegations will be presumed in determining "whether they plausibly give rise to an entitlement to relief." Angell v. BER Care, Inc. (In re Caremerica, Inc.), 409 B.R. 737, 747 (Bankr. E.D.N.C. 2009) (citation omitted).  Although it "assume[s] the facts alleged in the complaint are true and draw[s] all reasonable factual inferences in favor [of the plaintiff]," Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002), the court "need not accept a complaint's legal conclusions drawn from the facts."

5

Augustson v. Bank of Am., N.A., 864 F. Supp. 2d 422, 427 (E.D.N.C. 2012) (citation omitted);

Robinson v. Deutsche Bank Nat'l Trust Co., No. 5:12–CV–590, 2013 WL 1452933, at *4 (E.D.N.C.

Apr. 9, 2013) ("In considering a motion to dismiss, the court assumes the truth of all facts alleged

in the complaint and the existence of any fact that can be proved, consistent with the complaint's

allegations." (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)).

### B. Preferential Transfer

Section 547, which permits a trustee to avoid certain transfers of the debtor's interest in

property to unsecured creditors during the ninety days prior to the commencement of the case

("preference period"), provided the transfer was—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such
transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the
petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive
if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the
provisions of this title.

11 U.S.C. 547(b).  "The trustee bears the burden of proving the avoidability of a transfer under §

6

547(b)."  <u>Campbell v. Hanover Ins. Co. (In re ESA Env't Specialists, Inc.)</u>, 709 F.3d 388, 394 (4th Cir. 2013) (citing 11 U.S.C. § 547(g)).  A complaint seeking to avoid and recover a preferential transfer survives a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if it provides "(a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of the transferee and (iv) the amount of the transfer."  <u>BER Care</u>, 409 B.R. at 748 (citation omitted).

The defendant does not contest, for purposes of its motion to dismiss, that the chapter 7 trustee has met his burden of proof with respect to the requisite elements under § 547(b)(1), (2), (4) and (5).  Instead, the defendant contends that the complaint fails to demonstrate, with sufficient plausibility, that the debtor was insolvent on the date of the alleged preferential transfer. Specifically, the defendant asserts that the presumption of insolvency is rebutted and the debtor, as of the transfer date, was not insolvent because the value of her non–exempt assets were greater than her liabilities.  Thus, the issue before the court, with respect to the first claim for relief, is whether the allegations in the complaint support a plausible belief regarding the debtor's insolvency on June 5, 2012, the date of the challenged transfer.[4]

The avoidance of a preferential transfer "is contingent on the debtor being insolvent on the date of the transfer."  <u>Angell v. Haveri (In re Caremerica, Inc.)</u>, 409 B.R. 346, 351 (Bankr. E.D.N.C. 2009).  An individual is "insolvent" where "the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . . ."  11 U.S.C. § 101(32)(A); <u>Harden v. Stephenson (In re</u>

---

[4]In its supporting memorandum, the defendant argues that the debtor was not insolvent as of the foreclosure sale date, which took place on May 24, 2013.  However, the transfer sought to be avoided by the trustee is transfer of the condominium to the defendant by the trustee's deed, which was executed and recorded on June 5, 2012.

Stephenson), Adv. No. 12–00065, 2012 WL 4680703, at *2 (Bankr. E.D.N.C. Oct. 1, 2012). Excluded from the calculation of insolvency is "exempt property and property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors." Stephenson, 2012 WL 4680703, at *2 (citations, alterations and quotation marks omitted). In determining insolvency, courts in the Fourth Circuit apply the "balance sheet test" whereby an entity is deemed insolvent if, on the date of the challenged transaction, the sum of its liabilities exceeds the fair market value of its nonexempt assets. Id. (citations omitted); Ivey v. Graham (In re Johnson), 336 B.R. 712, 716 (Bankr. M.D.N.C. 2006) (emphasizing that "insolvency exists when the sum of all of the debtor's debts is greater than the fair market value of the debtor's assets minus the value of any property fraudulently conveyed by the debtor and minus the fair market value of any property that may be exempted from the property of the estate.").

Section 547(f), however, states that "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). A complaint must provide facts showing that the transfers were made during this 90–day preference period for the trustee to be entitled to the presumption of insolvency. See, e.g., Haveri, 409 B.R. at 351 (citation omitted); Angell v. Day (In re Caremerica, Inc.), 415 B.R. 200, 205 (Bankr. E.D.N.C. 2009) (finding "that a complaint asserting the presumption of insolvency under § 547(f) for transfers made during the 90–day period prior to the petition date must specify the dates on which the transfers were made."). This presumption, however, may be rebutted. Miller & Rhoads, Inc. Secured Creditors' Trust v. Robert Abbey, Inc. (In re Miller & Rhoads, Inc.), 146 B.R. 950, 955 (Bankr. E.D. Va. 1992) (stating that the "presumption requires preference defendants to come forward with evidence to rebut the presumption").

8

The chapter 7 trustee's first claim for relief, based on §§ 547, 550 and 551, seeks avoidance of the trustee's deed conveying the condominium to the defendant as a preferential transfer.  With respect to the timing of the transfer, the complaint alleges that the transfer occurred within ninety days preceding the filing of the debtor's petition.  Apart from the presumption of insolvency, the chapter 7 trustee alleges that the debtor's records, petition and schedules indicate that she became insolvent as a result of the involuntary transfer of the condominium.  Utilizing the debtor's amended schedules, the complaint states that the debtor's total liabilities, approximately $56,028.58, exceeded her total assets, which had a fair market value of approximately $56,000.00, on the date of the transfer.

These allegations, drawing all reasonable inferences in favor of the chapter 7 trustee, give rise to the plausible belief that the transfer of the condominium occurred within the ninety–day period preceding the bankruptcy filing and, therefore, triggers the presumption of insolvency under § 547(f).  The defendant's challenges to the values and corresponding calculation of the debtor's total assets and liabilities is not sufficient evidence to rebut the presumption that the debtor was insolvent at the time of the transfer.  See Miller & Rhoads, 146 B.R. at 955.  The court finds that the complaint contains sufficient allegations, including the inference to be drawn from the presumption of insolvency, that the debtor's total liabilities exceeded her total nonexempt assets on the date of the condominium was transferred to the defendant.  Accordingly, the chapter 7 trustee has plausibly demonstrated the debtor's insolvency under § 547(b)(3).

### C.  Constructively Fraudulent Transfer

Section 548 permits the trustee to avoid, as constructively fraudulent, "any transfer of an interest of the debtor in property . . . within two years before the date of the filing of the petition,"

9

provided the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation[ ]" and either

> (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B)(ii); In re Chase, 328 B.R. 675, 681 (Bankr. D. Vt. 2005) (emphasizing that fraudulent conveyance actions "seek to avoid a windfall to the creditor, to prevent a disproportionate loss to the debtor and, especially in bankruptcy cases, to recognize the rights of unsecured creditors to all of the debtor's non-exempt assets, including non–exempt equity in real estate."). Constructively fraudulent transfers, in contrast to those based on actual fraud, "focus[] on the effect the transfer had on the debtor's financial condition without regard for the debtor's state of mind or intentions." Angell v. Endcom, Inc. (In re Tanglewood Farms, Inc. of Elizabeth City), 487 B.R. 705, 710 (Bankr. E.D.N.C. 2013) (citation omitted); accord Haveri, 409 B.R. at 353 (stating that an action to avoid constructively fraudulent transfers "rely on the debtor's financial condition and the sufficiency of the consideration provided by the transferee." (citation omitted)).

This court has emphasized, on numerous occasions, that "[a]dequate pleadings under 548(a)(1)(B) include a list of the alleged fraudulent transfers, identification of the consideration received by the transferee, and information concerning why the consideration was not equivalent

10

in value." Endcom, 487 B.R. at 711 (citing Beaman v. Barth (In re Amerilink, Ltd.), Adv. No.

10–00164, 2011 WL 1048848, at *3 (Bankr. E.D.N.C. Mar. 18, 2011)); BER Care, 409 B.R. at 756.

"To avoid payments [or transfers] as constructively fraudulent, the trustee must prove by a

preponderance of the evidence, that the challenged payments [or transfers] were not made in

exchange for reasonably equivalent value."    Endcom, 487 B.R. at 709 (citation omitted).

Reasonably equivalent value is determined as of the date of the transfer and "is not wholly

synonymous with market value even though market value is an extremely important factor to be

used in the Courts assessment of reasonable equivalence."    In re Morris Commc'm NC, Inc, 914

F.2d 458, 466 (4th Cir. 1990).

Relying on the Supreme Court's decision in BFP v. Resolution Trust Corp., 511 U.S. 531

(1994), the defendant argues that its compliance with substantive and procedural requirements for

the foreclosure of its claim of lien bars the chapter 7 trustee from plausibly demonstrating that the

debtor received less than reasonably equivalent value as a result of the foreclosure sale pursuant to

§ 548(a)(1)(B).[5]  According to the defendant, the absence of any allegations of collusion between

the debtor and the defendant or procedural defect with respect to the foreclosure proceeding and

sale, BFP conclusively establishes that the debtor received reasonably equivalent value that the

satisfaction of her obligation to the defendant.

In BFP, the Supreme Court held, with respect to mortgage foreclosures, that "a fair and

proper price, or a 'reasonably equivalent value' for foreclosed property, is the price in fact received

at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been

---

[5]The defendant, for purposes of its motion to dismiss, does not contest that the transfer of
the condominium took place within the two–year period prior to the petition date and that the
debtor was insolvent or became insolvent as a result of the challenged transfer.

complied with." Id. at 545.  Thus, the court concluded that "the consideration received at a noncollusive, regularly conducted real estate foreclosure sale constitutes a reasonably equivalent value under 548(a)(2)(A).  Id. at 536.  In reaching this conclusion, the court "decline[d] to read the phrase 'reasonably equivalent value' . . . to mean, in its application to mortgage foreclosure sales, either 'fair market value' or 'fair foreclosure price' (whether calculated as a percentage of fair market value or otherwise)[,]" because the concept of fair market value "has no applicability in the forced–sale context." Id. at 545 (recognizing that "market value, as it is commonly understood, has no applicability in the forced-sale context; indeed, it is the very *antithesis* of forced-sale value." (emphasis in original)).  The court further observed:

> Any irregularity in the conduct of the sale that would permit judicial invalidation of the sale under applicable state law deprives the sale price of its conclusive force under § 548(a)(2)(A), and the transfer may be avoided if the price received was not reasonably equivalent to the property's actual value at the time of the sale (which we think would be the price that would have been received if the foreclosure sale had proceeded according to law).

Id. at 545–46.  The court, however, expressly limited its holding to mortgage foreclosure sales by stating that "[t]he considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different." Id. at 537 n. 3.[6]

The chapter 7 trustee acknowledges the holding in BFP in the context of mortgage foreclosures; however, he seeks to distinguish the circumstances surrounding BFP and its applicability to the facts of the instant case.  He relies on the above–referenced limiting language for his contention that, for purposes of the foreclosure sale of the condominium to satisfy its claim

---

[6]Footnote three of the court's opinion reads as follows: "We emphasize that our opinion today covers only mortgage foreclosures of real estate.  The considerations bearing upon *other foreclosures* and forced sales (to satisfy tax liens, for example) may be different." 511 U.S. 537 n. 3 (emphasis added).

of lien, the purchase price, $9,500.00, did not provide the debtor with reasonably equivalent value. The chapter 7 trustee analogizes the foreclosure proceeding and sale in the instant case to a tax foreclosure, which some courts have excepted from the reach of <u>BFP</u>.[7]  These arguments, however, overlook <u>In re Holler</u>, 184 B.R. 243 (Bankr. M.D.N.C. 1995) and N.C. Gen. Stat. § 47F–3–116, both of which compel the court to apply <u>BFP</u> to the foreclosure sale conducted by the defendant to satisfy its claim of lien.

In <u>Holler</u>, the Bankruptcy Court for the Middle District of North Carolina concluded that the purchase price of a parcel of real property at tax foreclosure sale, which was conducted in accordance with North Carolina law, constituted reasonably equivalent value for purposes of 548(a)(1)(B).  184 B.R. at 251–52.  In reaching this conclusion, the court recognized that the statutory schemes governing tax foreclosures and mortgage foreclosures share numerous similarities,

---

[7]Numerous courts, in the wake of <u>BFP</u>, have emphasized the narrowness of the court's holding and refused to extend it outside the mortgage foreclosure context. <u>See</u>, <u>e.g.</u>, <u>In re Berley Assocs., Ltd.</u>, ___ B.R. ___, 2013 WL 2099816, at *1 (Bankr. D.N.J. May 16, 2013) (finding that <u>BFP</u> "do[es] not bar recovery by the Debtor under 11 U.S.C. § 548(a)(1)(B), in that the price received at the tax sale certificate foreclosure does not necessarily reflect a reasonably equivalent value for the underlying property."); <u>City of Milwaukee v. Gillespie</u>, 487 B.R. 916, 921 (E.D. Wis. 2013) ("[D]epending on the amount the property owner owed in delinquent real estate taxes, and the value of the property, some transfers that result from tax lien foreclosures may very well be for 'reasonably equivalent value.'"); <u>Harris v. Penesi (In re Harris)</u>, No. 01–10365, 2003 WL 25795591, at *4–5 (Bankr. N.D.N.Y. Mar. 11, 2003); <u>In re Prince Gardner, Inc.</u>, 220 B.R. 63, 66 (Bankr. E.D. Mo. 1998) (determining that "BFP does not, as a matter of law, equate the price received in these circumstances with the reasonably equivalent value required [under 548(a)(1)(B)]."); <u>D'Alfonso v. A.R.E.I. Inv. Corp. (In re D'Alfonso)</u>, 211 B.R. 508, 518 (Bankr. E.D. Pa. 1997) (expressing an "unwilling[ness] . . . to extend the narrow holding in <u>BFP</u> beyond mortgage foreclosures to include tax foreclosure sales, as in the present case.").  In determining whether a debtor has received reasonably equivalent value in the context of foreclosure sales falling outside the Supreme Court's holding in <u>BFP</u>, bankruptcy courts, which "regularly make . . . determinations about the 'reasonably equivalent value' of assets transferred through other means[,] . . . can refer to the traditional common–law notion of fair market value as the benchmark." <u>BFP</u>, 511 U.S. at 547–48 (rationalizing that fair market value has application outside of the mortgage foreclosure–sale context).

including the posting of a public notice of sale, requiring public auction with competitive bidding, and each providing a period by which the property owner may exercise their equity of redemption. Id. at 252. Thus, the distinction attempted by the chapter 7 trustee in the instant case runs afoul of Holler because the statutory procedures governing tax foreclosures are as adequate as those protections afforded in non–judicial mortgage foreclosures in North Carolina. See id.

North Carolina, in Article 2A of Chapter 45 and Chapter 47F of the North Carolina General Statutes, has codified a diverse framework governing non–judicial foreclosures of claims of lien arising from unpaid homeowners association assessments.[8]  N.C. Gen. Stat. § 47F–3–116(a), governing the collection, enforcement and foreclosure of a homeowners association assessment lien, grant these lien claimants the authority "to foreclose the claim of lien in a like manner as a mortgage on real estate under power of sale or under Article 2A of Chapter 45 of the General Statutes, if the assessment remains unpaid for 90 days or more." Id.; In re Five Oaks Recreational Ass'n, Inc., 724 S.E.2d 98, 101 (N.C. Ct. App. 2012).

As noted above, N.C. Gen. Stat. § 47F–3–116(a) explicitly authorizes the defendant to proceed with the foreclosure of its claim of lien in a manner similar to non–judicial foreclosure of a deed of trust under Article 2A of Chapter 45, N.C. Gen. Stat. § 45–21.1 et seq.  Therefore, the procedure and guidelines governing the foreclosure sale in the instant case were those proscribed

---

[8]Article 2A of Chapter 45 of the North Carolina General Statutes is a coherent statutory scheme that permits a mortgagee under a deed of trust containing a power of sale, to commence a non–judicial foreclosure proceeding.  Chapter 47F of the North Carolina General Statutes, entitled "The North Carolina Planned Community Act," ("PCA") is a "series of statutes regulating the creation, alteration, termination, and management of planned subdivision communities." Bodine v. Harris Vill. Prop. Owners Ass'n, Inc., 207 N.C. App. 52, 59, 699 S.E.2d 129, 134 (2010) (citing N.C. Gen. Stat. § 47F–1–101).  The PCA applies to homeowners associations created on or before January 1, 1999; however, some of its provisions apply regardless of the date of creation.  See N.C. Gen. Stat. § 47F–1–102(c).

for mortgages and deeds of trust. <u>See</u> <u>id.</u>  Based on this explicit incorporation in N.C. Gen. Stat. § 47F–3–116(a), the rationale articulated by <u>BFP</u> for concluding that the price received at a mortgage foreclosure sale constitutes "reasonably equivalent value" under 548(a)(1)(B) applies equally to a foreclosure sale conducted to satisfy a claim of lien.  However, the purchase price paid by the defendant at the foreclosure sale, $9,500.00, will not constitute reasonably equivalent value for purposes of 548(a)(1)(B) if there is any irregularity in the foreclosure proceeding or sale "that would permit judicial invalidation of the sale under [North Carolina law.]" <u>BFP</u>, 511 U.S. at 545.

To set aside a foreclosure sale under North Carolina law, "the inadequacy of the purchase price must be coupled with some other irregularity in the sale." <u>Griffin v. Roberts</u>, 88 N.C. App. 734, 736, 364 S.E.2d 698, 699–700 (1988).  In determining whether a foreclosure sale should be set aside, courts are required "(1) to evaluate the adequacy of the sales price, (2) to identify whether any irregularities occurred in connection with the sale, and (3) to determine if the irregularities were material." <u>Beneficial Mortg. Co. of N.C. v. Peterson</u>, 163 N.C. App. 73, 80, 592 S.E.2d 724, 728 (2004).  Under North Carolina law, "materiality of a defect in an execution [or foreclosure] sale is not established solely by inadequacy of purchase price."  <u>In re Dowdy</u>, No. 09–00336, 2009 WL 3336116, at *4 (Bankr. E.D.N.C. Oct. 14, 2009) (holding that the filing of numerous upset bids "are evidence that the procedural error had no effect on the interest in the property[;]" therefore, "the procedural misstep was immaterial as to the determination of price . . . ."); <u>see</u> <u>Hill v. Albermarle Fertilizer Co.</u>, 210 N.C. 417, 421, 187 S.E. 577, 579 (1936) ("Mere inadequacy of purchase price alone is not sufficient to upset a sale when duly and regularly made.  'But gross inadequacy of consideration, when coupled with any other inequitable element, even though neither, standing alone, may be sufficient for the purpose, will induce a court of equity to interpose and do justice

15

between the parties.'" (citations omitted)).  This principle was clarified in <u>Swindell v. Overton</u>:

> [I]t is the materiality of the irregularity in such a sale, not mere inadequacy of the purchase price, which is determinative of a decision in equity to set the sale aside. Where an irregularity is first alleged, gross inadequacy of purchase price may then be considered on the question of the materiality of the irregularity.  Where inadequacy of purchase price is necessary to establish the materiality of the irregularity, it must also appear that the irregularity or unusual circumstance caused the inadequacy of price.

310 N.C. 707, 713, 314 S.E.2d 512, 516 (1984) (internal citations omitted).

An irregularity entitling a court to set aside a foreclosure sale includes an instance where the record discloses actual fraud, collusion, oppression or unfairness by the trustee or the secured party in connection with the sale.  <u>See</u>, <u>e.g.</u>, <u>Hill</u>, 210 N.C. at 421–22, 187 S.E. at 579 (refusing to set aside a foreclosure sale where it was not the product of fraud, collusion, oppression or unfairness); <u>Foust v. Gate City Savings & Loan Ass'n</u>, 233 N.C. 35, 37–38, 62 S.E.2d 521, 523–24 (1950).  "[I]f the trustee faithfully performs his duties under a power of sale then there is no irregularity in the sale which would allow a court of equity to set aside the sale."  <u>Griffin</u>, 88 N.C. App. at 737, 364 S.E.2d at 700 (collecting cases).  An irregularity is material if it has a "'natural and probable effect' on the sales price.'" <u>Peterson</u>, 163 N.C. App. at 83, 592 S.E.2d at 730 (citation omitted).

> Potential effect and not actual effect is all that is required if the ultimate sales price is grossly inadequate: "Actuality of injury is not a prerequisite of relief.  The potentialities of the error, considered in connection with the grossly inadequate price, compel the conclusion that the irregularity in the sale was material and prejudicial–sufficient in nature to justify the interposition of a court of equity."

<u>Id.</u> (quoting <u>Foust</u>, 233 N.C. at 38, 62 S.E.2d at 523).

The chapter 7 trustee argues, in accordance with North Carolina law, that the foreclosure sale in the instant could be set aside due to a material irregularity that caused the sales price of the condominium to be inadequate.  The material irregularity advanced in the instant case is that

16

defendant's counsel, who was the trustee that initiated the foreclosure proceedings and conducted the foreclosure sale, actively represented the defendant in the foreclosure proceedings. This, according to the chapter 7 trustee, prohibited defendant's counsel from being a disinterested party to the proceedings and demonstrates that, in his capacity as trustee, defendant's counsel was not acting as a neutral party in the best interests of both the debtor and the defendant.

Under North Carolina law, a trustee of a deed of trust "is bound by his office to present the sale under every possible advantage to the debtor as well as to the creditor," and therefore must "use not only good faith but also every requisite degree of diligence in conducting the sale and to attend equally to the interest of the debtor and creditor alike." Mills v. Mut. Bldg. & Loan Ass'n, 216 N.C. 664, 669, 6 S.E.2d 549, 552 (1940) (citations omitted). The theory is "that the trustee is a disinterested third party acting as agent both of the debtor and of the creditor, thus removing any opportunity for oppression by the creditor and assuring fair treatment to the debtor." Id.; see 1 James A. Webster, Jr., Webster's Real Estate Law in North Carolina § 13–31[2] (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 6th ed. 2012) (emphasizing that "a trustee/attorney cannot ethically represented either the lender or the borrower as an advocate at any stage of the foreclosure by sale process." (citing N.C. Eth. Op. CPR 166 (July 14, 1978)). The North Carolina Supreme Court "has long recognized that the trustee of a deed of trust stands in a fiduciary relationship with both the debtor and creditor." In re Vogler Realty, Inc., 365 N.C. 389, 397, 722 S.E.2d 459, 465 (2012) (citations omitted); see, e.g., Mills, 216 N.C. at 669, 6 S.E.2d at 552; Gregg v. Williamson, 246 N.C. 356, 360, 98 S.E.2d 481, 485 (1957) (emphasizing that "[t]he trustee must be impartial in the performance of his duties" and cannot "give an unfair advantage to one [party] to the detriment of the other"). Addressing the mortgagee's purchase at a foreclosure sale conducted by a trustee, who

17

was also acting as its agent, the North Carolina Supreme Court observed

> a number of decisions . . . holding consistently that where the trustee or mortgagee, or his agent, purchases property at a foreclosure sale under the terms of the trust deed or mortgage, either for himself or another, the trustor may elect to treat the sale as a nullity and demand a resale as against the trustee or mortgagee, or his agent, or purchasers from them with notice, even though competitive bidding at the sale was not discouraged and the purchase price represented the fair market value of the property at the time of the sale, and the trustor was present at the sale and made no objection thereto.

Davis v. Doggett, 212 N.C. 589, 592–93, 194 S.E. 288, 290 (1937) (collecting cases).  In reaching this conclusion, the court observed that "[a]t all times the trustee selling under the power of sale in the trustee deed should be and remain at arm's length to the buyer." Id.

Accordingly, it is plausible that the defendant procured an unfair advantage to the detriment of the debtor because defendants' counsel was acting both as the trustee and representing the defendant in connection with the foreclosure proceeding and sale.  See, e.g., Mills, 216 N.C. at 669, 6 S.E.2d at 552 ("[T]he trustee is a disinterested third party acting as agent both of the debtor and of the creditor, thus removing any opportunity for oppression by the creditor and assuring fair treatment of the debtor."); Davis, 212 N.C. at 592–93, 194 S.E. at 290.  Since the complaint plausibly demonstrates the existence of an irregularity with the potential for decreasing the sales price, the next question becomes the adequacy of the price.  The defendant, the sole bidder at the foreclosure sale, purchased the condominium for $9,500.00 in satisfaction of its claim of lien.  The fair market value of the condominium, which the debtor acquired for $86,000.00 in 2006, was approximately $50,000.00.  Taking the allegations in the complaint as true, the court finds that the complaint has plausibly demonstrated that the foreclosure sale price, which represented 19% of the condominium's fair market value, was grossly inadequate.

Based on these allegations and in accordance with North Carolina law, the court finds that

18

the complaint has plead facts sufficient to demonstrate a plausible basis to justify judicial invalidation of the foreclosure sale based on the existence of a material irregularity causing the sales price to be grossly inadequate.  Having determined that the price paid by the defendant at the foreclosure sale does not conclusively establish "reasonably equivalent value" under BFP, the court finds that the chapter 7 trustee has plausibly demonstrated that the debtor did not receive reasonably equivalent value in exchange for the involuntary transfer of the condominium to the defendant in satisfaction of its claim of lien.

## CONCLUSION

Based on the foregoing and in accordance with the court's tentative ruling at the conclusion of the hearing, the defendant's motion to dismiss for failure to state a claim upon which relief may be granted is **DENIED.**

**END OF DOCUMENT**